LAMB *v.* LAMB.[1]

1. PARTNERSHIP—CREDITORS—FRAUD—LACHES—RELIEF.

Where certain creditors of a partnership and one of the partners, without the participation of the other, acquired, by foreclosure of a mortgage theretofore given to secure the creditors, the assets of the partnership, under an agreement that when the creditors had been paid their debts the assets should be returned to the participating partner, the nonparticipating partner did not lose his equitable rights by the failure to assert them for five years thereafter.

2. SAME—CORPORATION—INTEREST OF PARTNER.

The creditors and the participating partner having thereafter organized a corporation, with the partnership assets as its capital, the nonparticipating partner was entitled to have whatever actual interest the participating partner had as shareholder in the corporation treated as an interest for the benefit of both.

3. SAME.

He was also entitled, on payment to such creditors of the amount still due them, to receive an assignment of their stock in the corporation, subject to an accounting between the partners.

[1] Rehearing denied June 29, 1905.

Appeal from St. Clair; Law, J. Submitted February 17, 1905. (Docket No. 177.) Decided May 12, 1905.

Bill by Hosea Lamb against William J. Lamb and others to set aside a sale of partnership property, the appointment of a receiver, and for an accounting. From a decree dismissing the bill, complainant appeals. Reversed.

*A. E. Chadwick* and *J. B. McIlwain*, for complainant.

*Avery & Walsh*, for defendants.

OSTRANDER, J. Complainant, a farmer living in St. Clair county, some time prior to 1889, bid in the stock in trade of a co-operative store at Jeddo, sold because the business was not profitable, and purchased by complainant, a stockholder in the concern, with the purpose to save his investment. The purchase price was about $650. He employed his nephew, the defendant William J. Lamb, then 18 or 19 years of age, to manage the store. In February, 1889, a partnership called Lamb & Lount was formed. The partners were Hosea Lamb, William J. Lamb, and Thomas Lount. Thomas Lount contributed $400 to the capital stock, which at this time was worth, according to complainant, $2,500, and according to William J. Lamb was worth $2,000, and William J. Lamb assumed and promised to pay a debt of Hosea Lamb of $500, evidenced by what is called the "Avery note." The interest of William J. Lamb was a one-fourth interest in the assets, and it is probable that Lount's interest was the same. Lount remained in the business about four years, and then retired. Upon what terms he retired, and how he was paid, the record does not seem to disclose. Thereafter Hosea Lamb and William J. Lamb conducted the business. On November 18, 1895, the firm was indebted to various persons, among whom were Pascal Lamb, Silas S. Arnot, and F. Saunders & Co., of Port Huron. The first two were liable as indorsers for firm paper,

and the last was a wholesale concern, or whom goods had been purchased on credit. Complainant, Hosea, had in June, 1895, conveyed to his wife by mortgage substantially all of his real and personal estate, excepting his interest in this business. Learning of this fact, these indorsers, claiming also that the business was running behind, insisted upon security. As a result, a mortgage was executed by Hosea Lamb and William J. Lamb, and their respective wives, on November 18, 1895, to Silas S. Arnot, trustee, conveying the assets of the firm, including the store building and the lot upon which it was erected. This mortgage contained the usual provision for returning to the mortgagors any sum remaining after payment of debts. It provided for public or private sale of the mortgaged property. It was properly recorded as a real-estate, and filed as a chattel, mortgage, and under the supervision of the trustee William J. Lamb continued to carry on the business. In the following April a foreclosure of the mortgage was attempted, and upon a public sale of the assets they were bid off by Pascal Lamb—the merchandise for $1,200, the real estate for $700, and the accounts for $100; a total of $2,000. The sale was made under an arrangement, later put in writing and signed, between Pascal Lamb, Arnot, Saunders & Co., and William J. Lamb, to bid in the property in the name of Pascal Lamb, to turn possession thereof over to William J. Lamb as trustee, to continue the business, and out of it to pay and discharge the cost to Arnot of his trust under the mortgage, to pay obligations upon which Arnot was liable, to pay obligations upon which Pascal Lamb was liable, to pay the debt to Saunders & Co. When these debts were paid, the property remaining was to belong to William J. Lamb. This instrument is dated April 23, 1896. Under its terms the business was conducted until March, 1901, when, certain unsecured creditors having made levies upon the property, a corporation was formed, called the W. J. Lamb Company, with an authorized capital of $6,000, with 600 shares. Of this, according to the articles filed,

William J. Lamb held 1 share, Pascal Lamb 211 shares, Fred J. Dixon (Saunders & Co.) 310 shares, Silas S. Arnot 78 shares. The first annual report of this company recited ownership of real estate valued at $1,000, actual value of personal estate $6,143.76, total indebtedness $2,401.37. The assets of this corporation are those of the firm of Lamb & Co., changed and augmented by the continuance of the business. After the sale in April, 1896, complainant and defendant William J. Lamb each employed a bookkeeper to examine the books of the partnership and to make and state an account as between the partners. The examination was made, the accounts of the partners as shown by the books were drawn off, and certain resultant or deduced statements made by one, at least, of these examiners. After the sale complainant seems to have been excluded from the business and treated as an outsider. In January, 1901, he filed his bill in this cause, in which he charges a conspiracy between Arnot, Pascal Lamb, William J. Lamb, and Saunders & Co. to obtain the chattel mortgage, to foreclose the same, and bid in the property for themselves, with the ultimate purpose to defraud him of his property; and he asks for a receiver of the firm assets, and a decree "setting aside and declaring void any sale or pretended sale of said store and lot composing the real estate" of the firm; an accounting for rental thereof, and an accounting between defendants and complainant "as to his interest, right, and title to the assets of said firm, and the amount of indebtedness individually and personally owing by said William J. Lamb to your orator."

Each of the defendants answered. Proofs were taken in open court. The court declined to hold the mortgage or the sale of the personal property thereunder to be void. The attempted sale of the real estate was held ineffective, and the mortgage as to that to be an existing lien and security in favor of the creditor defendants. An interlocutory decree was ordered, requiring Arnot,

Pascal Lamb, and Saunders & Co. to prove in court the amount of any indebtedness in their favor existing at the date of the mortgage yet unpaid; that after a determination of such indebtedness a decree be entered giving complainant a fixed time in which to pay such indebtedness and redeem the real estate, and, in event of such payment, an accounting could be had with William J. Lamb as to partnership matters. After a delay of several months, the court, in an order reciting the earlier findings, and that solicitors for complainant had stated that they desired no such interlocutory decree, entered a decree dismissing the bill.

The record in the case is in such shape that we cannot attempt to make and state from it an account. A considerable number of exhibits were used at the hearing which are not returned to this court. Defendants were called as witnesses by the complainant, and, excepting their testimony and certain papers referred to in their cross-examination, no proof was introduced on the part of defendants. The mortgage recited an indebtedness to various persons of $7,000, but did not recite the respective indebtedness to any creditor, nor name any creditor excepting those preferred. We do not believe the claim of complainant that he knew nothing or little about the condition of the business at and before the time the mortgage was given, or that he was in any way deceived or improperly persuaded to execute the mortgage. If he made any objection to the giving of the mortgage, it was because it provided for preferences, instead of for an equal distribution of the firm assets among creditors. There is abundant evidence of a condition warranting the demand by these creditors for security. No creditor attacks the mortgage. Complainant sat by for five years before he sought to question the transaction. Meantime the business had been conducted by the diligent creditors in such way that some, at least, of the unsecured creditors have been paid. The business is a going one, and the assets are probably not less in value than were the firm assets which were mortgaged. We do not think that

equity requires that either the mortgage or the sale under it be set aside and treated as void, nor that complainant should have presented to him now the assets of this corporation discharged from claims of the defendant creditors. Whether the assets of the firm in November, 1895, were equal, at fair value, to the indebtedness of the firm, we cannot, with certainty, determine. It is matter of common knowledge that a fund consisting of merchandise and book accounts, if attacked and dispersed by creditors, must be considerably larger than the indebtedness enforced if it produces sufficient to pay the debts. And in this case there is evidence warranting the conclusion that the assets of Lamb & Co. fairly sold at public auction would have produced a sum less than the amount of the Arnot, Pascal Lamb, and Saunders & Co. indebtedness.

What, then, does equity require shall be done in favor of this complaining partner, who has for years slept upon whatever rights he possesses? In our opinion, equity permits us to proceed at all only because defendants have agreed among themselves that when the creditor defendants have been paid their debts the assets shall be returned to William J. Lamb. William J. Lamb was the partner of complainant, and the arrangement he made with the creditor defendants may be treated as made for the benefit of the partnership, because his duty as partner was to act, with respect to the partnership assets, for the interest of the partnership. This arrangement will be held to obtain between the shareholders of the corporation. Whatever actual interest William J. Lamb has or is entitled to have as shareholder in the corporation under the agreement stated will be held to be an interest for the benefit of himself and complainant. Complainant is entitled to pay to defendants, Arnot, Pascal Lamb, and Saunders & Co. such sum or sums as an accounting shall show to be still due to them, and to receive from them, upon such payment, an assignment of their stock in the corporation which he will hold subject to an accounting to be had between himself and William J. Lamb as partners.

The decree of the court below will be reversed, and the

record remanded, with directions to enter an order preserving the present status of the assets and capital stock of the W. J. Lamb Company, to make and state an account showing to what extent the debts of the creditor defendants existing November 18, 1895, have been paid and the amount remaining unpaid, the amount of current indebtedness of the corporation, and upon the coming in of such account a decree will be entered in conformity with this opinion, permitting complainant to pay to each of said creditor defendants the sum so found to be unpaid, and upon such payment to receive from said defendants an assignment of their shares of the capital stock of said company. In default of such payment, and upon the motion of complainant, the assets of said corporation, including the real estate, the title to which will, in said decree, be quieted, will be offered for sale under the order and direction of the court. If, upon such sale of assets, the sum or sums bid shall not exceed the amount of the indebtedness as determined by the court and the costs and expenses of sale, then title to all of such property and assets, including the real estate, shall vest in said corporation, discharged of any claim or demand of complainant. If the sum or sums bid shall exceed said demands, then said sale shall be concluded, the fund resulting be brought into court, and out of it the court will order paid the current indebtedness of the company, the amount found due to Arnot, Pascal Lamb, and Saunders & Co., in the order named. So much of the fund as remains will be held and treated as a partnership fund, to be distributed to complainant and defendant William J. Lamb upon such basis as an accounting between them as partners shall warrant. Nothing in this opinion or in said decree shall, in any event, prevent an accounting between the partners, Hosea Lamb and William J. Lamb, in this case, if complainant so desires.

Complainant will recover from defendants the costs of this appeal.

CARPENTER, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.